1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  RAOUL MEILLEUR,

CASE NO. C11-1025 MJP

11              Plaintiff,

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'

12      v.

MOTION TO DISMISS

13  AT&T INC., and DOES 1 through 20,

14              Defendants.

15

16          This matter comes before the Court on Defendants' motion to dismiss Counts B through E

17  of Plaintiff's complaint pursuant to Rule 12(b)(6).  (Dkt. No. 26.)  Having reviewed the motion,

18  the opposition (Dkt. No. 30), the reply (Dkt. No. 32), and all related papers, the Court GRANTS

19  in part and DENIES in part the motion.

20                                      **Background**

21          Plaintiff pursues federal and state consumer protection claims against AT&T arising out

22  of its pre-recorded marketing call campaign allegedly intended to advertise AT&T's long distance

23  service.  The proposed class action was filed in state court and removed to this Court pursuant to

24  the Class Action Fairness Act.  Defendants have moved to dismiss four of the five claims in the

1  complaint.  Plaintiff has since amended his complaint, but the parties agree the new complaint

2  does not alter the motion to dismiss or the claims presented.  (Dkt. No. 36.)  The parties have

3  asked that the Court to treat the motion as applied to the amended complaint, to which the Court

4  agrees.  (Dkt. No. 37.)

5        Plaintiff alleges that on January 6, 2010, AT&T placed a call to his residential line in

6  Seattle that "consisted of a pre-recorded message delivered by an automatic dialing and

7  announcing device ('ADAD')." (Amended Compl. ("AC") ¶¶ 2.1-2.2.)  Plaintiff alleges the message

8  contained "words to the effect that 'someone in your household has made international calls on

9  your phone that have been billed at AT&T's maximum rate,'" and it urged him to call AT&T at a

10 toll-free number.  (Id. ¶ 2.2.)  After listening to the pre-recorded message, Plaintiff was

11 concerned someone was making calls from his phone through AT&T.  (Id. ¶ 2.5.)  Plaintiff had

12 ceased to be an AT&T customer as of January 6, 2009.  (Id. ¶ 2.3.)  He called the toll-free

13 number the same day he received the call and asked if the pre-recorded call was a sales call.  (Id.

14 ¶¶ 2.5, 2.7.)  Plaintiff alleges the representative told him the call was not a sales call, but advised

15 him he was paying too much for his long distance service and that AT&T could offer a better

16 rate.  (Id. ¶ 2.7.)  Plaintiff alleges that he believes the call was made for the purpose of

17 commercial solicitation and that he neither consented to the call nor was an AT&T customer.

18 (Id. ¶¶ 2.10, 2.11.)  Plaintiff requested to speak to a manager, but after leaving a message for a

19 manager he never had his call returned.  (Id. ¶ 2.8.)  On January 8, 2010, Plaintiff attempted to

20 dial a number in Canada and was not connected.  (Id. ¶ 2.9.)  He was instead connected to a pre-

21 recorded message from AT&T advising him his service was blocked due to lack of payment.

22 (Id.)  When challenged, AT&T admitted Plaintiff did not owe any money for unpaid charges.

23 (Id.)

24

1        Despite the fact Plaintiff has listed his residential phone number on the national Do-Not-

2 Call registry and has objected to calls in the past from AT&T he allegedly received marketing

3 calls from AT&T telemarketers prior to the January 6, 2010 call.  (AC ¶ 2.4.)  Plaintiff does not

4 allege when he received the earlier calls.  On information and belief, Plaintiff alleges other

5 persons similarly situated in Washington received calls similar to those he received.  (Id. ¶¶ 2.12-

6 2.13.)  Plaintiff seeks to represent a national class of persons who received a pre-recorded call

7 without prior consent in violation of 47 U.S.C. §227(b)(1)(B), and a national subclass of persons

8 who were on the Do-Not-Call registry and who received the call from AT&T in violation of 47

9 C.F.R. § 64.1200.  (Id. ¶ 4.2.)  He proposes a Washington State class consisting of those who

10 received a pre-recorded call from AT&T for purposes of commercial solicitation and a

11 Washington State subclass of persons who received two or more calls from AT&T within one

12 year of the date they asked not to be called by AT&T.  (Id.)

13        Plaintiff pursues five causes of action and asks for declaratory and injunctive relief.  Two

14 claims are brought under federal law, and three under state law.  Defendants move to dismiss all

15 but the first federal cause of action.  Plaintiff has voluntarily dismissed "Count E" and Defendants

16 do not challenge Count A.  Although the claims should be labeled "causes of action" and not

17 "counts," the Court uses the term "count" as the parties have to refer to the causes of action.

18                                         **Analysis**

19 A.     <u>Standard</u>

20        On a motion to dismiss, the Court must accept the material allegations in the complaint as

21 true and construe them in the light most favorable to Plaintiff.  <u>NL Indus., Inc. v. Kaplan</u>, 792

22 F.2d 896, 898 (9th Cir. 1986).  A motion to dismiss filed pursuant to Rule 12(b)(6) tests the

23 sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  "To survive a motion

24

1  to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

2  relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell

3  Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  The plaintiff must provide "more than labels

4  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

5  Twombly, 550 U.S. at 555.

6  B.    Count B

7         Defendants seek dismissal of Plaintiff's claim that AT&T violated federal regulations

8  promulgated under the Telephone Consumer Protection Act ('TCPA') on the theory that Plaintiff

9  must, but has not alleged he received two phone calls in a 12 month period.  Defendants are

10 correct.

11        The TCPA provides a private cause of action to enforce violations of regulations the

12 Federal Communications Commission ('FCC') promulgated under the Act.  47 U.S.C. § 227(c)(5).

13 The TCPA provides a cause of action to "[a] person who has received more than one telephone

14 call within any 12-month period by or on behalf of the same entity in violation of the regulations

15 prescribed under this subsection." Id.  The FCC regulation Plaintiff cites to as the basis of its

16 claim is a ban on unsolicited calls to residential subscribers who have placed themselves on the

17 Do-Not-Call registry.  47 C.F.R. § 64.1200(c)(2) (2010).  It provides no stand alone cause of

18 action.  Rather, as Plaintiff admits, the cause of action to enforce the regulations exists only in §

19 227(c)(5), which requires the receipt of two or more calls in a twelve-month period.  (Dkt. No.

20 30 at 9 n.2.)  Reading the statute and regulation together, the Court holds that the plaintiff must

21 allege he received two calls violating the do-not-call regulations in a twelve-month period to

22 have a cause of action under the TCPA to enforce 47 C.F.R. § 64.1200(c)(2).

23

24

1    Plaintiff has failed to allege a cause of action under the TCPA and 47 C.F.R. §

2   64.1200(c)(2).  Plaintiffs complaint alleges that he received calls from AT&T prior to January 6,

3   2010, but he fails allege that two were made in a twelve month period.  The Court GRANTS the

4   motion and DISMISSES this claim.  Plaintiff has asked for leave to amend, which the Court

5   permits.  It may be possible for Plaintiff to provide sufficient detail to meet the requirements of

6   alleging a claim under the TCPA.  Any amended complaint must be filed within 15 days of entry

7   of this order.

8   C.    Counts C and D

9    Plaintiff pursues one claim under the Washington Automatic Dialing and Answering

10   Devices Act ("Washington ADAD"), RCW 80.36.400, and one claim under the Consumer

11   Protection Act ("CPA") under which a violation of the Washington ADAD is a per se CPA

12   violation.  Defendants argue Plaintiffs two state law claims are preempted and, alternatively,

13   inadequately pleaded.  The Court addresses preemption first and the adequacy of the allegations

14   second, finding no defect in the claims as pleaded.

15    1.    Preemption

16        a.    Presumption Against Preemption

17    The parties dispute whether the Court is to begin its preemption analysis with a

18   presumption against preemption.  The Supreme Court has recently reaffirmed the presumption

19   applies to this matter despite one Ninth Circuit case suggesting otherwise.

20    "In all pre-emption cases, and particularly in those in which Congress has legislated . . . in

21   a field which the States have traditionally occupied, . . . we start with the assumption that the

22   historic police powers of the States were not to be superseded by the Federal Act unless that was

23   the clear and manifest purpose of Congress." Wyeth v. Levine, 555 U.S. 555, 565 (2009)

24

1    (internal quotation marks and citations omitted).  In Wyeth the Supreme Court held that

2    presumption against preemption must be applied to state drug labeling laws, even though the

3    federal government has regulated this field for more than a century.  Id. at 565 n.3.  The Court

4    explained "[w]e rely on the presumption because respect for the States as 'independent sovereigns

5    in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state-law

6    causes of action.'" Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Rather, "[t]he

7    presumption . . . accounts for the historic presence of state law but does not rely on the absence

8    of federal regulation." Id.  The mere fact that federal laws have existed in a particular field does

9    not call for rejection of the presumption.

10          The Court applies the presumption against preemption in this case.  The TCPA and

11    Washington ADAD both reflect a desire to protect consumer privacy and rights.  State consumer

12    protection laws arise under a state's traditional police powers, and the Washington ADAD is an

13    express consumer protection law.  See Chae v. SLM Corp., 593 F.3d 936, 944 (9th Cir. 2010);

14    RCW 80.36.400(3).  The presumption should thus apply.  Defendants argue that Wyeth did not

15    overrule a Ninth Circuit case that found the presumption should not apply because of the long

16    federal presence in regulating long distance communication.  (Dkt. No. 32 at 7 (quoting Ting v.

17    AT&T, 319 F.3d 1126, 1136 (9th Cir. 2003)).)  The court reasoned in Ting that because the

18    federal government had regulated long distance rates for a long time, the presumption should not

19    apply.  Ting, 319 F.3d at 1136.  Wyeth rejected that logic, holding that even where the federal

20    government had regulated drug labeling for over a century the presumption against preemption

21    should still attach.  Id., 555 U.S. at 565 n.3.  The Court finds Ting has little continued

22    application in light of Wyeth and thus applies the presumption against preemption.

23                b.    No Express Preemption

24

1      Defendants incorrectly argue that the TCPA expressly preempts state laws such as the

2  Washington ADAD.  The Act contains a savings clause the allows state laws to coexist, such as

3  the Washington ADAD.

4      The TCPA contains a savings clause that allows states to prohibit the use of automatic

5  telephone dialing systems.  47 U.S.C. § 227(e)(1).  The law states:

6          Except for the standards prescribed under subsection (d) of this section and
           subject to paragraph (2) of this subsection, nothing in this section or in the
7          regulations prescribed under this section shall preempt any State law that imposes
           more restrictive intrastate requirements or regulations on, or which prohibits-
8          (A) the use of telephone facsimile machines or other electronic devices to send
           unsolicited advertisements;
9          (B) the use of automatic telephone dialing systems;
           (C) the use of artificial or prerecorded voice messages; or
10         (D) the making of telephone solicitations.

11  Id.  The parties dispute the proper interpretation of the clause, disputing whether the word

12  'intrastate' applies to the words 'requirements or regulations' only or if it applies to the word

13  'prohibits' as well.  Defendants argue that the word 'intrastate' applies to any regulations,

14  requirements or prohibitions, and does not allow prohibitions that affect interstate affairs.  Only a

15  minority of courts accept that proposition.  See Hovila v. Tween Brands, Inc., No. C09-

16  0491RSL, 2010 WL 1433417, at *8 (W.D. Wash. Apr. 7, 2010).  Plaintiff argues that the

17  sentence cannot be read to impose the 'intrastate' limitation on the word 'prohibit' without the Court

18  simply re-writing the statute.  This District has uniformly held the word 'intrastate' does not apply

19  to prohibitions on the use of automated telephone dialing systems and the making of telephone

20  solicitations.  See Palmer v. Sprint Nextel Corp., 674 F. Supp. 2d 1224, 1229-31 (W.D. Wash.

21  2009); Hovila, 2010 WL 1433417, at *7-8.  As explained below, the Court comes to no different

22  conclusion.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS- 7

1    The interpretation of preemption "fundamentally is a question of congressional intent, and

2    when Congress has made its intent known through explicit statutory language, the courts' task is

3    an easy one." English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990).  The Court applies standard

4    principles of statutory interpretation when examining a savings clause.  See Aguayo v. U.S.

5    Bank, 653 F.3d 912, 920-22 (9th Cir. 2011). "Under accepted canons of statutory interpretation,

6    we must interpret statutes as a whole, giving effect to each word and making every effort not to

7    interpret a provision in a manner that renders other provisions of the same statute inconsistent,

8    meaningless or superfluous." Boise Cascade Corp. v. U.S. E.P.A., 942 F.2d 1427, 1432 (9th Cir.

9    1991).

10    Applying standard principles of statutory interpretation and the presumption against

11    preemption, the Court follows the majority position that states may prohibit both interstate and

12    intrastate use of automatic dialers. "Read logically and grammatically, § 227(e) expressly saves

13    from preemption two distinct and independent categories of state law. . . ." Hovila, 2010 WL

14    1433417, at *8.  The distinct categories are: (1) a state law "that imposes more restrictive

15    intrastate requirements or regulations on . . . the use of automatic dialing systems" and (2) any

16    state law "which prohibits  . . . the use of automatic dialing systems." 47 U.S.C. § 227(e)(1).  This

17    dichotomy results from the sentence's parallel construction: after the words "state law," the

18    sentence has two different objects separated by the word "or." On the one hand are laws "that

19    impose[] more restrictive intrastate requirements or regulations" and on the other are laws "which

20    prohibit[]" certain calling activities.   The word "intrastate" modifies only first object: state law

21    regulations or requirements.  The modifier "intrastate" has no application to state law prohibitions,

22    as the word "intrastate" modifies only the words "requirements or regulations."

23

24

1    Defendants incorrectly argue this is an inaccurate reading of the statute that creates

2  inconsistencies in the law.  Defendants start from the untenable proposition that the words

3  regulations, requirements, and prohibits "overlap significantly and can be used interchangeably."

4  (Dkt. No. 26 at 15.)  There is no legal support for this argument, and it ignores that each word

5  has a distinct and obvious meaning.  Defendants cite to no court that has held them to be

6  interchangeable.  Doing so would muddy otherwise clear Congressional language, which the

7  Court is disinclined to do.  Defendants argue further that the intrastate requirement must apply to

8  prohibitions, or the Court will create a "bizarre result." (Dkt. No. 32 at 9.)  This argument is

9  flawed at the outset in that there is no ambiguity in the language itself that would permit the

10  Court to re-write the statute.  Further, the distinction between limiting state regulations to

11  intrastate matters, while allowing prohibitions on interstate action is not necessarily bizarre.  As

12  the court explained in Hovila, "[t]he primary purpose of the TCPA was to ban automated or

13  prerecorded telephone calls to a home . . . [and t]hrough the savings clause, Congress expressly

14  excluded from preemption certain categories of state law that accomplish the same goal."

15  Hovila, 2010 WL 1433417, at *9.  The savings clause encourages states to continue to ban

16  automated dialers, while discouraging possibly inconsistent regulatory schemes that might

17  conflict with the TCPA's dictates on such activity.  The Court REJECTS Defendants' argument.

18    c.    Conflict Preemption

19    Defendants argue that there is a conflict between the TCPA and the Washington ADAD.

20  No such conflict exists.

21    A claim of conflict preemption requires an examination of "the federal statute as a whole

22  to determine whether a party's compliance with both federal and state requirements is possible or

23  whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS- 9

1    to the accomplishment of Congress's objectives." Whistler Invs., Inc. v. Depository Trust and

2    Clearing Corp., 539 F.3d 1159, 1166 (9th Cir. 2008).

3         Defendants argue only that the state law poses an obstacle to accomplishing the

4    Congressional objectives behind the TCPA.  This is a weak argument.  It rests on there being an

5    exemption under the TCPA for those entities using automated dialers to contact those with an

6    existing business relationship, while the state laws have no exemption.  This District has already

7    found this argument "fallacious" because when Congress enacted the TCPA in 1991 it "made no

8    provisions for existing business relationships." Hovila, 2010 WL 1433417, at *9.  Instead,

9    Congress announced "the primary purpose of the TCPA was to protect telephone consumers from

10   nuisance and invasion of privacy by banning most automated or prerecorded telephone calls to

11   the home." Id. (citing Congressional Statement of Findings, § 2 of Pub. L. 102-243).  Here, the

12   Washington ADAD works towards that same goal of ending unwanted automated calls to the

13   home.  There is no actual or implied conflict, as the Washington ADAD's prohibition on

14   commercial calls with an automated dialing device in no way impedes the stated purposes of

15   Congress.  Defendants have failed to show any conflict warranting a finding of preemption based

16   on an actual or implied conflict.  The Court REJECTS Defendants' argument on this point.

17         d.    No deference to FCC

18         Defendants erroneously argue that the FCC has already held that the TCPA preempts

19   state law prohibiting interstate telemarketing calls.  (Dkt. No. 32 at 10.)  The FCC's

20   pronouncement is entitled to no deference.

21         A Court determines whether to give an agency's interpretation of a statute deference by

22   employing the two-step Chevron analysis.  Satterfield v. Simon & Schuster, Inc., 569 F.3d 946,

23   952 (9th Cir. 2009) (citing Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS- 10

1    (1984)).  Under this rubric, the Court must first determine whether the intent of Congress is

2    clear, and to give effect to the unambiguously expressed intent of Congress.  Second, if the

3    statute is silent or ambiguous, the Court is to defer to the agency's permissible construction of the

4    statute.  Id.

5         The Court gives no deference to the FCC's position because there is no ambiguity in the

6    language of the TCPA's savings clause.  Congress has expressly allowed states to prohibit

7    interstate use of automatic dialing machines.  See Palmer, 674 F. Supp. 2d at 1231.  The FCC's

8    interpretation of the TCPA's savings clause is thus not binding and unpersuasive.  The FCC wrote

9    that "[w]e . . . believe that any state regulation of interstate telemarketing that differs from our

10   rules almost certainly would be preempted." Rules and Regulations Implementing the Telephone

11   Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. at 44155.  Yet, the FCC has never held

12   that any particular state law prohibiting automated dialers is preempted and it remains an open

13   question.  It is thus unclear from the FCC's position whether the Washington ADAD would

14   actually conflict with the TCPA.  For these basic reasons, the Court affords no deference to the

15   FCC's pronouncements.

16        2.    Counts C and D Adequately Pleaded

17        Having found the Washington ADAD to survive any claim of preemption, the Court finds

18   Plaintiff has adequately alleged a violation of the Washington ADAD and the Washington CPA.

19        Washington's ADAD prohibits the use of ADADs in commercial solicitation. See RCW

20   80.36.400(2).  The primary issue is whether Defendants' calls constituted "commercial solicitation"

21   within the context of the Washington ADAD. "Commercial solicitation means the unsolicited

22   initiation of a telephone conversation for the purpose of encouraging a person to purchase

23   property, goods, or services." RCW 80.36.400(1)(b).  A violation of the Washington ADAD is a

24

1   per se CPA violation.  RCW 80.36.400(3).  The question is whether an automated call that

2   invites the recipient of the call to call the company responsible for the automated call is a

3   "commercial solicitation."  The Court holds such a call is a "commercial conversation."

4          One court within this District has examined this same portion of the Washington ADAD

5   and concluded that there is no violation where a person receives an automated call that merely

6   attempts to convey information but does not initiate a conversation.  Cubbage v. Talbots, Inc.,

7   No. C09-911BHS, 2010 WL 2710628, at *5 (W.D. Wash. July 7, 2010) ("[T]he automated call

8   simply provided information (albeit, a solicitation to purchase goods at Talbots), without the

9   ability of the caller or recipient of the call to engage in conversation.").  Defendants rely on this

10   case to suggest that Plaintiff has not stated a claim because the automated call he received was

11   not a conversation.  The case cannot be stretched as far as Defendants suggest.

12          Plaintiff has alleged a violation of the Washington ADAD by virtue of the automated call

13   he received that has been adequately alleged to be a "commercial solicitation."  See RCW

14   80.36.400(2).  A commercial solicitation is one that initiates a conversation.  RCW

15   80.36.400(1)(b).  The call Plaintiff received told him that had been billed at AT&T's maximum

16   rate and that he should call a toll-free number to speak to AT&T about it.  (AC ¶ 2.2.)  Unlike the

17   recorded call in Cubbage, the call here initiated a dialogue with Plaintiff.  It asked him to call

18   AT&T back, while the call from Talbots in Cubbage merely advertised a sale.  Thus, Cubbage

19   does not command the Court to dismiss Plaintiff's state law claims.  Instead, it supports a finding

20   that the call here was the initiation of a conversation because it invited Plaintiff to call AT&T

21   and buy its services.  Plaintiff has also alleged that he believed the call was made for a

22   commercial purpose, and it would appear that the facts likely support such a finding even if the

23

24

1    AT&T representative he spoke to said it was not a sales call.  As Defendants recognize, whether

2    the call was for a commercial purpose or not is a question of fact.

3            The Court DENIES Defendants' motion on this issue and permits Plaintiff to pursue his

4    Washington ADAD claim.  Because the CPA claim is based on a existence of a valid

5    Washington ADAD claim, it too is permitted to proceed.

6                                          **Conclusion**

7            The Court GRANTS in part and DENIES in part Defendant's motion.  First, Plaintiff has

8    voluntarily dismissed Count E.  Second, Plaintiff has not properly alleged a violation of 47

9    C.F.R. § 64.1200(c)(2) in Count B because Plaintiff has failed to allege he received two or more

10   calls in a twelve-month period.  The Court GRANTS Defendants' motion on this claim and

11   DISMISSES Count B without prejudice.  Third, Plaintiff's state law claims in Counts C and D are

12   neither preempted nor flawed as a matter of pleading.  The Court DENIES the motion to dismiss

13   as to these claims.  Plaintiff must file any amended complaint within 15 days of entry of this

14   order.

15           The clerk is ordered to provide copies of this order to all counsel.

16           Dated this 16th day of November, 2011.

17

18

19

20   Marsha J. Pechman
     United States District Judge

21

22

23

24