UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAOUL MEILLEUR,<br><br>           Plaintiff,<br><br>    v.<br><br>AT&T INC., and DOES 1 through 20,<br><br>           Defendants. | CASE NO. C11-1025 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' motion to dismiss Counts B through E of Plaintiff's complaint pursuant to Rule 12(b)(6). (Dkt. No. 26.) Having reviewed the motion, the opposition (Dkt. No. 30), the reply (Dkt. No. 32), and all related papers, the Court GRANTS in part and DENIES in part the motion.

**Background**

Plaintiff pursues federal and state consumer protection claims against AT&T arising out of its pre-recorded marketing call campaign allegedly intended to advertise AT&T's long distance service. The proposed class action was filed in state court and removed to this Court pursuant to the Class Action Fairness Act. Defendants have moved to dismiss four of the five claims in the

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS- 1

complaint. Plaintiff has since amended his complaint, but the parties agree the new complaint does not alter the motion to dismiss or the claims presented. (Dkt. No. 36.) The parties have asked that the Court to treat the motion as applied to the amended complaint, to which the Court agrees. (Dkt. No. 37.)

Plaintiff alleges that on January 6, 2010, AT&T placed a call to his residential line in Seattle that "consisted of a pre-recorded message delivered by an automatic dialing and announcing device ('ADAD')." (Amended Compl. ('AC') ¶¶ 2.1-2.2.) Plaintiff alleges the message contained "words to the effect that 'someone in your household has made international calls on your phone that have been billed at AT&T's maximum rate,'" and it urged him to call AT&T at a toll-free number. (Id. ¶ 2.2.) After listening to the pre-recorded message, Plaintiff was concerned someone was making calls from his phone through AT&T. (Id. ¶ 2.5.) Plaintiff had ceased to be an AT&T customer as of January 6, 2009. (Id. ¶ 2.3.) He called the toll-free number the same day he received the call and asked if the pre-recorded call was a sales call. (Id. ¶¶ 2.5, 2.7.) Plaintiff alleges the representative told him the call was not a sales call, but advised him he was paying too much for his long distance service and that AT&T could offer a better rate. (Id. ¶ 2.7.) Plaintiff alleges that he believes the call was made for the purpose of commercial solicitation and that he neither consented to the call nor was an AT&T customer. (Id. ¶¶ 2.10, 2.11.) Plaintiff requested to speak to a manager, but after leaving a message for a manager he never had his call returned. (Id. ¶ 2.8.) On January 8, 2010, Plaintiff attempted to dial a number in Canada and was not connected. (Id. ¶ 2.9.) He was instead connected to a pre-recorded message from AT&T advising him his service was blocked due to lack of payment. (Id.) When challenged, AT&T admitted Plaintiff did not owe any money for unpaid charges. (Id.)

Despite the fact Plaintiff has listed his residential phone number on the national Do-Not-Call registry and has objected to calls in the past from AT&T he allegedly received marketing calls from AT&T telemarketers prior to the January 6, 2010 call. (AC ¶ 2.4.) Plaintiff does not allege when he received the earlier calls. On information and belief, Plaintiff alleges other persons similarly situated in Washington received calls similar to those he received. (Id. ¶¶ 2.12-2.13.) Plaintiff seeks to represent a national class of persons who received a pre-recorded call without prior consent in violation of 47 U.S.C. §227(b)(1)(B), and a national subclass of persons who were on the Do-Not-Call registry and who received the call from AT&T in violation of 47 C.F.R. § 64.1200. (Id. ¶ 4.2.) He proposes a Washington State class consisting of those who received a pre-recorded call from AT&T for purposes of commercial solicitation and a Washington State subclass of persons who received two or more calls from AT&T within one year of the date they asked not to be called by AT&T. (Id.)

Plaintiff pursues five causes of action and asks for declaratory and injunctive relief. Two claims are brought under federal law, and three under state law. Defendants move to dismiss all but the first federal cause of action. Plaintiff has voluntarily dismissed "Count E" and Defendants do not challenge Count A. Although the claims should be labeled "causes of action" and not "counts," the Court uses the term "count" as the parties have to refer to the causes of action.

**Analysis**

A. <u>Standard</u>

On a motion to dismiss, the Court must accept the material allegations in the complaint as true and construe them in the light most favorable to Plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). "To survive a motion

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS- 3

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

B.     Count B

Defendants seek dismissal of Plaintiff's claim that AT&T violated federal regulations promulgated under the Telephone Consumer Protection Act ('TCPA') on the theory that Plaintiff must, but has not alleged he received two phone calls in a 12 month period. Defendants are correct.

The TCPA provides a private cause of action to enforce violations of regulations the Federal Communications Commission ('FCC') promulgated under the Act. 47 U.S.C. § 227(c)(5). The TCPA provides a cause of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." Id. The FCC regulation Plaintiff cites to as the basis of its claim is a ban on unsolicited calls to residential subscribers who have placed themselves on the Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2) (2010). It provides no stand alone cause of action. Rather, as Plaintiff admits, the cause of action to enforce the regulations exists only in § 227(c)(5), which requires the receipt of two or more calls in a twelve-month period. (Dkt. No. 30 at 9 n.2.) Reading the statute and regulation together, the Court holds that the plaintiff must allege he received two calls violating the do-not-call regulations in a twelve-month period to have a cause of action under the TCPA to enforce 47 C.F.R. § 64.1200(c)(2).

Plaintiff has failed to allege a cause of action under the TCPA and 47 C.F.R. § 64.1200(c)(2). Plaintiffs complaint alleges that he received calls from AT&T prior to January 6, 2010, but he fails allege that two were made in a twelve month period. The Court GRANTS the motion and DISMISSES this claim. Plaintiff has asked for leave to amend, which the Court permits. It may be possible for Plaintiff to provide sufficient detail to meet the requirements of alleging a claim under the TCPA. Any amended complaint must be filed within 15 days of entry of this order.

C. <u>Counts C and D</u>

Plaintiff pursues one claim under the Washington Automatic Dialing and Answering Devices Act ("Washington ADAD"), RCW 80.36.400, and one claim under the Consumer Protection Act ("CPA") under which a violation of the Washington ADAD is a per se CPA violation. Defendants argue Plaintiffs two state law claims are preempted and, alternatively, inadequately pleaded. The Court addresses preemption first and the adequacy of the allegations second, finding no defect in the claims as pleaded.

    1.    <u>Preemption</u>

        a.    <u>Presumption Against Preemption</u>

The parties dispute whether the Court is to begin its preemption analysis with a presumption against preemption. The Supreme Court has recently reaffirmed the presumption applies to this matter despite one Ninth Circuit case suggesting otherwise.

"In all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." <u>Wyeth v. Levine</u>, 555 U.S. 555, 565 (2009)

(internal quotation marks and citations omitted).  In Wyeth the Supreme Court held that presumption against preemption must be applied to state drug labeling laws, even though the federal government has regulated this field for more than a century.  Id. at 565 n.3.  The Court explained "[w]e rely on the presumption because respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state-law causes of action.'"Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).  Rather, "[t]he presumption . . . accounts for the historic presence of state law but does not rely on the absence of federal regulation."  Id.  The mere fact that federal laws have existed in a particular field does not call for rejection of the presumption.

The Court applies the presumption against preemption in this case.  The TCPA and Washington ADAD both reflect a desire to protect consumer privacy and rights.  State consumer protection laws arise under a state's traditional police powers, and the Washington ADAD is an express consumer protection law.  See Chae v. SLM Corp., 593 F.3d 936, 944 (9th Cir. 2010); RCW 80.36.400(3).  The presumption should thus apply.  Defendants argue that Wyeth did not overrule a Ninth Circuit case that found the presumption should not apply because of the long federal presence in regulating long distance communication.  (Dkt. No. 32 at 7 (quoting Ting v. AT&T, 319 F.3d 1126, 1136 (9th Cir. 2003)).)  The court reasoned in Ting that because the federal government had regulated long distance rates for a long time, the presumption should not apply.  Ting, 319 F.3d at 1136.  Wyeth rejected that logic, holding that even where the federal government had regulated drug labeling for over a century the presumption against preemption should still attach.  Id., 555 U.S. at 565 n.3.  The Court finds Ting has little continued application in light of Wyeth and thus applies the presumption against preemption.

   b.  No Express Preemption

1       Defendants incorrectly argue that the TCPA expressly preempts state laws such as the

2 Washington ADAD. The Act contains a savings clause the allows state laws to coexist, such as

3 the Washington ADAD.

4       The TCPA contains a savings clause that allows states to prohibit the use of automatic

5 telephone dialing systems. 47 U.S.C. § 227(e)(1). The law states:

> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits-
> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
> (B) the use of automatic telephone dialing systems;
> (C) the use of artificial or prerecorded voice messages; or
> (D) the making of telephone solicitations.

Id. The parties dispute the proper interpretation of the clause, disputing whether the word 'intrastate' applies to the words 'requirements or regulations' only or if it applies to the word 'prohibits' as well. Defendants argue that the word 'intrastate' applies to any regulations, requirements or prohibitions, and does not allow prohibitions that affect interstate affairs. Only a minority of courts accept that proposition. See Hovila v. Tween Brands, Inc., No. C09-0491RSL, 2010 WL 1433417, at *8 (W.D. Wash. Apr. 7, 2010). Plaintiff argues that the sentence cannot be read to impose the 'intrastate' limitation on the word 'prohibit' without the Court simply re-writing the statute. This District has uniformly held the word 'intrastate' does not apply to prohibitions on the use of automated telephone dialing systems and the making of telephone solicitations. See Palmer v. Sprint Nextel Corp., 674 F. Supp. 2d 1224, 1229-31 (W.D. Wash. 2009); Hovila, 2010 WL 1433417, at *7-8. As explained below, the Court comes to no different conclusion.

The interpretation of preemption "fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). The Court applies standard principles of statutory interpretation when examining a savings clause. See Aguayo v. U.S. Bank, 653 F.3d 912, 920-22 (9th Cir. 2011). "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." Boise Cascade Corp. v. U.S. E.P.A., 942 F.2d 1427, 1432 (9th Cir. 1991).

Applying standard principles of statutory interpretation and the presumption against preemption, the Court follows the majority position that states may prohibit both interstate and intrastate use of automatic dialers. "Read logically and grammatically, § 227(e) expressly saves from preemption two distinct and independent categories of state law. . . ." Hovila, 2010 WL 1433417, at *8. The distinct categories are: (1) a state law "that imposes more restrictive intrastate requirements or regulations on . . . the use of automatic dialing systems" and (2) any state law "which prohibits . . . the use of automatic dialing systems." 47 U.S.C. § 227(e)(1). This dichotomy results from the sentence's parallel construction: after the words "state law," the sentence has two different objects separated by the word "or." On the one hand are laws "that impose[] more restrictive intrastate requirements or regulations" and on the other are laws "which prohibit[]" certain calling activities. The word "intrastate" modifies only first object: state law regulations or requirements. The modifier "intrastate" has no application to state law prohibitions, as the word "intrastate" modifies only the words "requirements or regulations."

1    Defendants incorrectly argue this is an inaccurate reading of the statute that creates
2 inconsistencies in the law. Defendants start from the untenable proposition that the words
3 regulations, requirements, and prohibits "overlap significantly and can be used interchangeably."
4 (Dkt. No. 26 at 15.) There is no legal support for this argument, and it ignores that each word
5 has a distinct and obvious meaning. Defendants cite to no court that has held them to be
6 interchangeable. Doing so would muddy otherwise clear Congressional language, which the
7 Court is disinclined to do. Defendants argue further that the intrastate requirement must apply to
8 prohibitions, or the Court will create a "bizarre result." (Dkt. No. 32 at 9.) This argument is
9 flawed at the outset in that there is no ambiguity in the language itself that would permit the
10 Court to re-write the statute. Further, the distinction between limiting state regulations to
11 intrastate matters, while allowing prohibitions on interstate action is not necessarily bizarre. As
12 the court explained in Hovila, "[t]he primary purpose of the TCPA was to ban automated or
13 prerecorded telephone calls to a home . . . [and t]hrough the savings clause, Congress expressly
14 excluded from preemption certain categories of state law that accomplish the same goal."
15 Hovila, 2010 WL 1433417, at *9. The savings clause encourages states to continue to ban
16 automated dialers, while discouraging possibly inconsistent regulatory schemes that might
17 conflict with the TCPA's dictates on such activity. The Court REJECTS Defendants' argument.
18        c.    Conflict Preemption
19    Defendants argue that there is a conflict between the TCPA and the Washington ADAD.
20 No such conflict exists.
21    A claim of conflict preemption requires an examination of "the federal statute as a whole
22 to determine whether a party's compliance with both federal and state requirements is possible or
23 whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle
24

to the accomplishment of Congress's objectives." Whistler Invs., Inc. v. Depository Trust and Clearing Corp., 539 F.3d 1159, 1166 (9th Cir. 2008).

Defendants argue only that the state law poses an obstacle to accomplishing the Congressional objectives behind the TCPA. This is a weak argument. It rests on there being an exemption under the TCPA for those entities using automated dialers to contact those with an existing business relationship, while the state laws have no exemption. This District has already found this argument "fallacious" because when Congress enacted the TCPA in 1991 it "made no provisions for existing business relationships." Hovila, 2010 WL 1433417, at *9. Instead, Congress announced "the primary purpose of the TCPA was to protect telephone consumers from nuisance and invasion of privacy by banning most automated or prerecorded telephone calls to the home." Id. (citing Congressional Statement of Findings, § 2 of Pub. L. 102-243). Here, the Washington ADAD works towards that same goal of ending unwanted automated calls to the home. There is no actual or implied conflict, as the Washington ADAD's prohibition on commercial calls with an automated dialing device in no way impedes the stated purposes of Congress. Defendants have failed to show any conflict warranting a finding of preemption based on an actual or implied conflict. The Court REJECTS Defendants' argument on this point.

d. No deference to FCC

Defendants erroneously argue that the FCC has already held that the TCPA preempts state law prohibiting interstate telemarketing calls. (Dkt. No. 32 at 10.) The FCC's pronouncement is entitled to no deference.

A Court determines whether to give an agency's interpretation of a statute deference by employing the two-step Chevron analysis. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) (citing Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837

1  (1984)). Under this rubric, the Court must first determine whether the intent of Congress is

2  clear, and to give effect to the unambiguously expressed intent of Congress. Second, if the

3  statute is silent or ambiguous, the Court is to defer to the agency's permissible construction of the

4  statute. Id.

5        The Court gives no deference to the FCC's position because there is no ambiguity in the

6  language of the TCPA's savings clause. Congress has expressly allowed states to prohibit

7  interstate use of automatic dialing machines. See Palmer, 674 F. Supp. 2d at 1231. The FCC's

8  interpretation of the TCPA's savings clause is thus not binding and unpersuasive. The FCC wrote

9  that "[w]e . . . believe that any state regulation of interstate telemarketing that differs from our

10 rules almost certainly would be preempted." Rules and Regulations Implementing the Telephone

11 Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. at 44155. Yet, the FCC has never held

12 that any particular state law prohibiting automated dialers is preempted and it remains an open

13 question. It is thus unclear from the FCC's position whether the Washington ADAD would

14 actually conflict with the TCPA. For these basic reasons, the Court affords no deference to the

15 FCC's pronouncements.

16       2.      <u>Counts C and D Adequately Pleaded</u>

17       Having found the Washington ADAD to survive any claim of preemption, the Court finds

18 Plaintiff has adequately alleged a violation of the Washington ADAD and the Washington CPA.

19       Washington's ADAD prohibits the use of ADADs in commercial solicitation. See RCW

20 80.36.400(2). The primary issue is whether Defendants' calls constituted "commercial solicitation"

21 within the context of the Washington ADAD. "Commercial solicitation means the unsolicited

22 initiation of a telephone conversation for the purpose of encouraging a person to purchase

23 property, goods, or services." RCW 80.36.400(1)(b). A violation of the Washington ADAD is a

24

per se CPA violation. RCW 80.36.400(3). The question is whether an automated call that invites the recipient of the call to call the company responsible for the automated call is a "commercial solicitation." The Court holds such a call is a "commercial conversation."

One court within this District has examined this same portion of the Washington ADAD and concluded that there is no violation where a person receives an automated call that merely attempts to convey information but does not initiate a conversation. Cubbage v. Talbots, Inc., No. C09-911BHS, 2010 WL 2710628, at *5 (W.D. Wash. July 7, 2010) ("[T]he automated call simply provided information (albeit, a solicitation to purchase goods at Talbots), without the ability of the caller or recipient of the call to engage in conversation."). Defendants rely on this case to suggest that Plaintiff has not stated a claim because the automated call he received was not a conversation. The case cannot be stretched as far as Defendants suggest.

Plaintiff has alleged a violation of the Washington ADAD by virtue of the automated call he received that has been adequately alleged to be a "commercial solicitation." See RCW 80.36.400(2). A commercial solicitation is one that initiates a conversation. RCW 80.36.400(1)(b). The call Plaintiff received told him that had been billed at AT&T's maximum rate and that he should call a toll-free number to speak to AT&T about it. (AC ¶ 2.2.) Unlike the recorded call in Cubbage, the call here initiated a dialogue with Plaintiff. It asked him to call AT&T back, while the call from Talbots in Cubbage merely advertised a sale. Thus, Cubbage does not command the Court to dismiss Plaintiff's state law claims. Instead, it supports a finding that the call here was the initiation of a conversation because it invited Plaintiff to call AT&T and buy its services. Plaintiff has also alleged that he believed the call was made for a commercial purpose, and it would appear that the facts likely support such a finding even if the

AT&T representative he spoke to said it was not a sales call. As Defendants recognize, whether the call was for a commercial purpose or not is a question of fact.

The Court DENIES Defendants' motion on this issue and permits Plaintiff to pursue his Washington ADAD claim. Because the CPA claim is based on a existence of a valid Washington ADAD claim, it too is permitted to proceed.

## Conclusion

The Court GRANTS in part and DENIES in part Defendant's motion. First, Plaintiff has voluntarily dismissed Count E. Second, Plaintiff has not properly alleged a violation of 47 C.F.R. § 64.1200(c)(2) in Count B because Plaintiff has failed to allege he received two or more calls in a twelve-month period. The Court GRANTS Defendants' motion on this claim and DISMISSES Count B without prejudice. Third, Plaintiff's state law claims in Counts C and D are neither preempted nor flawed as a matter of pleading. The Court DENIES the motion to dismiss as to these claims. Plaintiff must file any amended complaint within 15 days of entry of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 16th day of November, 2011.

Marsha J. Pechman
United States District Judge